## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:24-cv-60431-LEIBOWITZ/AUGUSTIN-BIRCH

**YOLANDA GASKIN**,

      *Plaintiff,*

*v.*

**HEALTHTRUST WORKFORCE SOLUTIONS**,

      *Defendant.*

_____/

### ORDER ADOPTING IN PART AND REJECTING IN PART
### REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon United States Magistrate Judge Panayotta Augustin-Birch's Report and Recommendation on Defendant's Motion for Summary Judgment (the "R&R") [ECF No. 90], entered on July 31, 2025, recommending the granting in part and denial in part of Defendant's Motion for Summary Judgment (the "Summary Judgment Motion") [ECF No. 45]. The undersigned referred the motion to Judge Augustin-Birch pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of the Local Magistrate Judge Rules. [*See* ECF No. 64]. Objections were timely filed by Defendant [ECF No. 91], which the Court has reviewed *de novo*. Plaintiff, however, has failed to respond thereto, nor has she filed objections to the R&R.

The Court also ordered the parties to provide supplemental briefing with respect to Count V and Count XIV of the Amended Complaint pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. [ECF No. 93]. Having reviewed and considered the R&R in light of the Objections, the parties' briefing (including the Rule 56(f) papers), the relevant portions of the record, and the applicable law, the Court concludes that Defendant is entitled to summary judgment on all counts of the Amended Complaint. Accordingly, the Court hereby **ADOPTS IN PART AND REJECTS IN**

PART Magistrate Judge Augustin-Birch's R&R [**ECF No. 90**].  Defendant's Objections [**ECF No. 91**] to the R&R are **SUSTAINED** for the reasons discussed below.

## I.        STANDARD OF REVIEW

In reviewing a Report and Recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).  "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted).  Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record" to accept the recommendation.  Fed. R. Civ. P. 72 Advisory Comm. 1983 Amend. note, subdivision (b).

## II.       LEGAL STANDARD ON SUMMARY JUDGMENT

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate.  *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000).  A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law . . . ." *Anderson*, 477 U.S. at 248.  A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Gervin v. Florence*, 139 F.4th 1236, 1245 (11th Cir. 2025).  "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (citing *Anderson*, 477 U.S. at 255).  However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As stated below and in light of the parties' Rule 56(f) briefing, the Court adopts in part and rejects in part Magistrate Judge Augustin-Birch's report and recommendation on the Summary Judgment Motion.  Accordingly, the Summary Judgment Motion [ECF No. 45] is GRANTED.

### III.    THE AMENDED COMPLAINT AND THE R&R

Plaintiff's Amended Complaint raises seventeen counts:  (Count I) a retaliation count under 42 U.S.C. § 1981; (Count II) a disparate treatment count under 42 U.S.C. § 1981; (Count III) a hostile work environment count under 42 U.S.C. § 1981; (Count IV) a retaliation count under the Americans with Disabilities Act ("ADA"); (Count V) a disparate treatment count under the ADA; (Count VI) a hostile work environment count under the ADA; (Count VII) a failure to accommodate count under

3

the ADA; (Count VIII) a retaliation count under Title VII of the Civil Rights Act of 1964; (Count IX) a disparate treatment count under Title VII; (Count X) a hostile work environment count under Title VII; (Count XI) a disparate treatment count under the Florida Civil Rights Act ("FCRA"); (Count XII) a retaliation count under the FCRA; (Count XIII) a hostile work environment count under the FCRA; (Count XIV) a second disparate treatment count under the FCRA; (Count XV) a second retaliation count under the FCRA; (Count XVI) a second hostile work environment count under the FCRA; and (Count XVII) a failure to accommodate count under the FCRA.  [ECF No. 38 at 10–42]. Of these seventeen counts, nine are based on Plaintiff's race (Counts I, II, III, VIII, IX, X, XI, XII, and XIII), and eight are based on Plaintiff's purported disability (Counts IV, V, VI, VII, XIV, XV, XVI, and XVII).  Defendant moves for summary judgment on all counts, contending that Plaintiff cannot establish a *prima facie* case for any of them.  [ECF No. 45].

Magistrate Judge Augustin-Birch in her R&R recommended granting the Summary Judgment Motion as to Counts III, IV, VI, VII, X, XIII, XV, XVI, and XVII, and recommended denying the Summary Judgment Motion for the remaining counts (Counts I, II, V, VIII, IX, XI, XII, and XIV).

## IV.    RULING ON OBJECTIONS

As an initial matter, the Court adopts the R&R in part, granting summary judgment on Counts III, IV, VI, VII, X, XIII, XV, XVI, and XVII of the Amended Complaint.  The Court notes Plaintiff's failure to file her own objections to the R&R, which recommended granting summary judgment on nine of Plaintiff's seventeen claims [ECF No. 90 at 21].  "In this Circuit, a plaintiff who fails to object to a report and recommendation waives her ability to challenge such report." *Harapeti v. CBS Television Stations, Inc.*, No. 20-CV-20961, 2023 WL 2866263, at *1 (S.D. Fla. Mar. 30, 2023) (first citing 11 Cir. R. 3-1; then citing *Schultz*, 565 F.3d at 1360–62).  To the extent a party fails to object to parts of the Magistrate Judge's report, those portions are reviewed for clear error.  *See Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (cleaned up).  Being that no objections were filed as to these nine

4

counts and the time to do so has passed,[1] the Court has reviewed the portions of the R&R that

addressed these nine counts for clear error only.  Upon review, the Court finds no clear error and

adopts Magistrate Judge Augustin-Birch's R&R vis-à-vis these nine claims.

As to the objections filed on the remaining claims (to which Plaintiff failed to respond),[2] the

Court sustains Defendant's objections to Magistrate Judge Augustin-Birch's R&R [ECF No. 91] and

declines to adopt the R&R regarding these remaining claims.

1.    Objection No. 1: The R&R's Findings on Plaintiff's Disability Discrimination Claims.

[ECF No. 91 at 2–7].  **SUSTAINED**.

Defendant objects to Magistrate Judge Augustin-Birch's recommendation to deny summary

judgment on Counts V and XIV.  Upon *de novo* review, the Court sustains this objection.  Defendant

argues that the R&R omitted a ruling on Plaintiff's claim of a stroke—which the Defendant specifically

requested in its Summary Judgment Motion—and is otherwise entitled to summary judgment on this

issue.  [*Id*. at 2 (citing ECF No. 45 at 7)].  Defendant also argues that it is entitled to summary judgment

on Plaintiff's claim of Bell's Palsy disability because there is no evidence that Defendant or the relevant

decisionmakers were aware of this disability.  Finding that Plaintiff failed to meet her burden at this

stage, the Court agrees with Defendant.

For starters, the Court disagrees with Defendant that it is entitled to summary judgment to

Plaintiff's claim of a stroke because of the purported lack of evidence that Plaintiff suffered from one.

[*See* ECF No. 91 at 2].  While it is true that Dr. Roberto Acosta never diagnosed Plaintiff with a stroke,

that is irrelevant.  *See Lowe v. Pettway*, 665 F. Supp. 3d 1313, 1328 n.11 (N.D. Ala. 2023) ("[A] plaintiff

---

[1]    Magistrate Judge Augustin-Birch also warned that failure to timely object will result in a waiver
of "the right to challenge on appeal the District Court's order based on unobjected-to factual and legal
conclusions contained in" the R&R.  [ECF No. 90 at 22].

[2]    Plaintiff recently filed a notice representing that she does not intend to file a response to
Defendant's objections, even though a response at this point would be untimely.  [*See* ECF No. 92 at
1].

need not obtain a formal diagnosis to receive coverage under the ADA. *See* 42 U.S.C. § 12101(1). Rather, the question is whether at the time of the adverse employment action the plaintiff had a physical or mental impairment that substantially limited one or more major life activities." (alterations adopted) (cleaned up)). At his deposition, Dr. Roberto Acosta repeatedly testified that he declined to rule out the possibility that Plaintiff suffered from a stroke. [*See* Deposition of Roberto Acosta, ECF No. 48-3 at 32:13–33:3; 36:9–21; 37:7–22; 51:17–25]. He even prescribed Plaintiff aspirin because that is a "typical prescription for someone who suffered a stroke[.]" [*Id.* at 45:5–18]. This dispute of fact precludes a summary judgment finding that Plaintiff did not actually suffer from a stroke.

Next, Defendant argues that there is no evidence that Defendant was aware of Plaintiff's alleged disability at the time of the adverse action. [ECF No. 91 at 4]. In this Court's view, Defendant did not squarely raise this argument in the Summary Judgment Motion. As the R&R correctly pointed out, Defendant only raised this argument vis-à-vis Plaintiff's "regarded as" claims—counts on which Magistrate Judge Augustin-Birch recommended granting summary judgment. [ECF No. 90 at 8 n.2; *see* ECF No. 45 at 10]. The same is true concerning the issue of whether Plaintiff was discriminated against because of her disability. Magistrate Judge Augustin-Birch pointed out that "Defendant does not challenge whether Plaintiff was a qualified individual or was subjected to unlawful discrimination because of her disability. Rather, Defendant contends that Plaintiff cannot . . . demonstrate the first required element: that she had a disability." [ECF No. 90 at 4]. In that regard, the Court disagrees with Defendant; the R&R did not "fail[] to address" something that was not squarely and clearly before Her Honor. [*See* ECF No. 91 at 4].

However, recognizing its ability to consider these arguments, *see Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (11th Cir. 2022) ("[D]istrict court[s] retain[] 'final adjudicative authority' in deciding whether to consider and evaluate new arguments that a party did not raise before the magistrate judge (quoting *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009))), the Court

ordered supplemental briefing pursuant to Rule 56(f).  [*See* ECF No. 93].  To assist the Court with final disposition of the Summary Judgment Motion, the Court allowed the parties the opportunity to brief these two issues vis-à-vis Count V and Count XIV.  Upon full review and after supplemental briefing, the Court concludes that there is insufficient evidence *that Defendant was aware of any disability* (whether from Bell's Palsy or stroke) suffered by Plaintiff and that Defendant discriminated against her *because of her disability.*

To establish a *prima facie* case of discrimination under the ADA, the employee must show evidence that "at the time of the adverse employment action, (1) he was regarded as having a disability; (2) he was a qualified individual for the position in question; and (3) the employer discriminated against him because of his disability."  *Collier v. Harland Clarke Corp.*, 820 F. App'x 874, 878 (11th Cir. 2020) (citing *Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016)). A plaintiff on summary judgment must provide sufficient evidence that her employer had knowledge of her disability to sustain a *prima facie* case of disability discrimination.  *See Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996) (per curiam); *see also Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334–35 (11th Cir. 2022).  The Eleventh Circuit has further explained this rule and concluded that constructive knowledge is insufficient; the employer must have *actual knowledge* of a disability.  *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1183–86 (11th Cir. 2005); *Hamilton v. Schneider Nat'l Carriers, Inc.*, No. 17-CV-3264, 2019 WL 11553744, at *18 (N.D. Ga. Jan. 24, 2019) ("The Court in *Cordoba* stated that it is a matter of common sense and logic that an employer cannot discriminate against an employee because of a disability when the employer does not know about the disability. . . . Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." (alteration rejected) (internal quotation marks omitted) (quoting *Cordoba*, 419 F.3d at 1183)).

Plaintiff has not met her burden to present these claims to a jury. As pled, the relevant adverse employment action tailored to Plaintiff's disability discrimination claims is *her termination*,[3] which occurred on March 30, 2023. [ECF No. 38 ¶¶ 109–10, 121, 147; Joint Statement of Undisputed Material Facts ("JSUMF"), ECF No. 65 ¶ 6]; *Rorie*, 2024 WL 51008, at *9 (declining to consider an adverse employment action that was raised "for the first time in response to" a motion for summary judgment and not pled in the operative complaint). Therefore, at this stage, Plaintiff was required to show a genuine issue of material fact existed that Defendant had actual knowledge of her disability at the time of her termination on March 30, 2023. *Collier*, 820 F. App'x at 878; *Howard v. Steris Corp.*, 550 F. App'x 748, 751 (11th Cir. 2013) (citing *Cordoba*, 419 F.3d at 1185). Plaintiff also had to show that her disability was the but-for cause of her termination. *See Collier*, 820 F. App'x at 879.

Accepting that Plaintiff raised an issue of fact regarding whether she had a disability, there is nothing in the summary judgment record to support that Defendant was aware of it at the time of termination and that Defendant subsequently fired her because of that disability. Plaintiff puts forth two relevant decisionmakers of Defendant, Supervisor Keri James ("Supervisor James") and Supervisor Jim Davis ("Supervisor Davis"). [ECF No. 38 ¶¶ 33, 35; ECF No. 59 at 13; *see also* JSUMF,

---

[3]       Plaintiff seemingly argues in her response to Defendant's Summary Judgment Motion that her termination was not the sole adverse employment action; it was also the "stripp[ing] [of] Plaintiff['s] . . . largest and most lucrative accounts . . . functionally demot[ing] Plaintiff, reducing her earnings and undermining her professional standing." [ECF No. 59 at 8]. However, that theory was not pled in the operative complaint for her disability discrimination claims. *See Rorie v. Sch. Bd. of Palm Beach Cnty., Fla.*, No. 21-CV-81865, 2024 WL 51008, at *9 (S.D. Fla. Jan. 4, 2024) ("Claims must be presented in the complaint and a plaintiff may not wait until the response to summary judgment to raise new claims." (cleaned up) (collecting cases)). Plaintiff's disability claims are grounded upon her termination as the relevant adverse employment action. [*See, e.g.*, ECF No. 38 ¶ 121 ("The Defendant terminated the Plaintiff because of her disability, in violation of the ADA.")]. Separately, Plaintiff has provided no legal authority to support the proposition that losing a key account constitutes adverse employment action. Even had Plaintiff done so, her disparate treatment claims under the ADA (Counts V and XIV) still fail for lack of a valid comparator. *See Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla.*, 46 F.4th 1268, 1275 (11th Cir. 2022) (holding that ADA "require[s] a plaintiff alleging disparate treatment to prove that he was treated less favorably than a similarly situated, non-disabled person.").

ECF No. 65 ¶ 14 ("James and Davis made the decision to terminate Gaskin's employment.")].[4] Accordingly, Plaintiff must meet her burden that either Supervisor James or Supervisor Davis knew of her purported disability at the time of her termination and fired her because of that disability.  After careful review of the evidence, the Court concludes that Plaintiff has not done so.

First, Plaintiff points to text messages between her and Supervisor James when Plaintiff was away on medical leave in April 2022.  [ECF No. 59 at 13 (citing ECF No. 58 ¶ 48); ECF No. 58-8 at 18–26; Deposition of Yolanda Gaskin ("Gaskin Depo."), ECF No. 48-2 at 26:3–30:25].[5]  In this text conversation, Plaintiff notified Supervisor James that her "[n]eurologist says it's a stroke, brain damage during the surgery or the infection from the intubation has gone to my nerves. The right side of my face is dropped[,]" and that her "right leg is affected as well."  [ECF No. 58-8 at 20, 24].  While this evidence raises an issue of fact of Supervisor James's awareness of a disability, this conversation took place in *April 2022*; it is undisputed that Plaintiff was terminated in March 2023.  [*See* JSUMF, ECF No. 65 ¶ 6].[6]  In her Rule 56(f) supplemental response, Plaintiff cited record evidence of knowledge

---

[4]     In Plaintiff's Rule 56(f) supplemental response, she avers that Angelique Douty was a relevant decisionmaker.  [*See* ECF No. 95 at 6].  This is improper for two reasons: (1) Plaintiff did not plead her as one in the Amended Complaint [*see* ECF No. 38 ¶ 35]; and (2) the parties stipulated that Supervisor James and Supervisor Davis made the decision to terminate Plaintiff [*see* JSUMF, ECF No. 65 ¶ 14].

[5]     The pinpoint citations for the deposition transcripts cited throughout this Order correspond to the pages of the CM/ECF system and not the page numbers of the transcripts themselves.

[6]     Plaintiff also alleged that Supervisor James questioned Plaintiff during weekly meetings about her ability to "hear and see."  [ECF No. 38 ¶¶ 54, 126].  But there is no evidence in the summary judgment record of this ever having been said.  Even if some evidence existed, the sufficiency of this type of evidence was squarely rejected by the Eleventh Circuit in *Morisky.*  There, the court stated that the plaintiff's evidence of her employer saying that "she could not read and had taken special education courses" was insufficient to create a genuine issue of material fact that her employer had notice of the disability under the ADA.  80 F.3d at 448.  As relevant here, the Eleventh Circuit stated that "[w]hile illiteracy is a serious problem, it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental impairment."  *Id.* (citation omitted).  Thus, the court concluded that such "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice[,]" and accordingly affirmed the grant of summary judgment for the employer.  *Id.* at 448–49.

only between April and June 2022,[7] but not at or near the time of her termination.  [*See* ECF No. 95 at 3–4, 7–8].  Indeed, Plaintiff concedes the following in her Rule 56(f) response: "Her termination *occurred less than a year after she disclosed her neurological impairment* and only months after being recommended for promotion."  [*Id.* at 5 (emphasis added)].  This concession dooms Plaintiff's claim.

Plaintiff also admitted at her deposition that she never told Supervisor James directly that she felt she was being discriminated against because of her purported disability.  [Gaskin Depo., ECF No. 48-2 at 48:13–17].  There is simply no evidence in the record to suggest that at the time Plaintiff was terminated in March 2023, Supervisor James was aware of the ongoing purported disability *and* that the disability was a determinative reason for Plaintiff's termination.  *See McNely v. Ocala–Star Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (holding that ADA liability requires proof that the decision at issue was a "but-for" cause of the alleged disability); *Andrews v. City of Hartford*, 700 F. App'x 924, 926 (11th Cir. 2017) ("The plaintiff is not required to establish that his disability was the sole basis for his discrimination, but need only show that his disability was a determinative factor."); *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1193 (11th Cir. 2024) ("[A] plaintiff may not pursue an ADA discrimination claim by showing 'a motivating factor' causation but must show but-for causation.").

Plaintiff has failed to proffer sufficient evidence showing the nexus between knowledge and causation at or near the time of her termination.  True, Plaintiff testified at her deposition that around the time of her termination, she "told [Supervisor James] about doctors' appointments that [she] had. [Supervisor James] was aware that [she] was still under a doctor's care."  [Gaskin Depo., ECF No. 48-2 at 91:21–92:12].  This, however, does not create a genuine issue of material fact that the alleged disability was the "but-for cause" of the termination.  *Morris v. Walmart Stores East LP*, No. 21-CV-

---

[7]     This included evidence of the text message exchange with Supervisor James, visible symptoms when Plaintiff returned from medical leave, and Supervisor James reassigning Plaintiff's clients.  [ECF No. 95 at 7–8].

0752, 2023 WL 11963002, at *14 (N.D. Ga. Jan. 26, 2023) ("[A]n employer's alleged knowledge of an employee's disability is not sufficient to show that the adverse action was because of the disability; the ADA requires Plaintiff to show that her disability was a 'but for' cause of the adverse action." (citations omitted)).[8]  Plaintiff's failure to meet her burden here warrants granting summary judgment in favor of Defendant on these claims.  *See Collier*, 820 F. App'x at 879 (affirming the grant of summary judgment for the employer because while the plaintiff established that his employer "was aware that [the plaintiff] had undergone surgery," there was "nothing to suggest that [the employer] acted because [the plaintiff] was disabled").

As for Supervisor Davis, the record is completely devoid of any evidence that Supervisor Davis knew of Plaintiff's purported disability and that he (along with Supervisor James) terminated Plaintiff because of it.  Plaintiff *herself* conceded that only Supervisor James discriminated against her based on the alleged disability.  [Gaskin Depo., ECF No. 48-2 at 31:1–6].  Thus, Plaintiff cannot meet her burden vis-à-vis Supervisor Davis either.

Moreover, and separate from Plaintiff's failure on the knowledge and causation elements required for her ADA claims to move forward to trial, Plaintiff has not shown pretext.  Unlike the knowledge and causation elements, Defendant squarely put forth this issue of lack-of-pretext in its Summary Judgment Motion.  [*See* ECF No. 45 at 19 ("To [show pretext], [Gaskin] must produce 'significantly probative evidence' for a reasonable fact finder to conclude these explanations are

---

[8]      In *Morris*, the plaintiff was able to survive summary judgment on this prong of her ADA disability discrimination claim because there was evidence in the record that her employer terminated her employment the day after informing them of her disability.  2023 WL 11963002, at *14.  Evidence of suspicious timing is absent here, however.  Plaintiff does not specify when she purportedly informed Supervisor James of her ongoing doctors' appointments in relation to when she was terminated.  Plaintiff argues that it's suspicious that she was terminated two months after being recommended for promotion.  [*See, e.g.*, ECF No. 95 at 10].  But the Defendant does not dispute that Plaintiff received positive work evaluations; only that her termination "was based on her behavior and not her job performance."  [Declaration of Keri James ("James Decl."), ECF No. 47-1 ¶ 15].

pretextual and that HWS's decisions were instead motivated by Gaskin's race (*or disability if these claims survive*) or by a desire to retaliate for her protected conduct." (emphasis added))].

The Court assumes here that Plaintiff has met her *prima facie* burden on the elements of her ADA claims that still remain to this point. The legal inquiry, however, does not end there. "Once the plaintiff establishes a *prima facie* case of discrimination under the ADA, if the employer articulates a legitimate, non-discriminatory reason for its alleged discriminatory action, the plaintiff must show that the reason was merely a pretext for discrimination." *Dulaney v. Miami-Dade County*, 481 F. App'x 486, 489–90 (11th Cir. 2012) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004)). Based on the record before the Court—and as stated further below given the Eleventh Circuit's recent guidance on this issue—there is no evidence of pretext *or* evidence of intentional discrimination to present these claims to a jury. This dearth of evidence dooms Plaintiff's disability claims under both the ADA and the FCRA. *See Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Claims raised under the Florida law are analyzed under the same framework as the ADA."). And because the lack of knowledge and causation dispense with Plaintiff's disability claims, the Court need not consider the remainder of Defendant's arguments. [*See* ECF No. 91 at 5–7].

In sum, the Court sustains this objection and will grant summary judgment for Defendant on Counts V and XIV.

2.   Objection No. 2: The R&R's findings on Plaintiff's Race Discrimination Claims. [ECF No. 91 at 7–15]. **SUSTAINED**.

Defendant next argues that the R&R incorrectly found genuine issues of material fact sufficient to recommend denial of summary judgment under the "convincing mosaic" of circumstantial evidence standard. The Court finds Defendant's arguments persuasive on this score.

As a preliminary matter, the Court agrees with Magistrate Judge Augustin-Birch that Plaintiff cannot make out a *prima facie* case of race discrimination under the *McDonnell-Douglas* framework because Plaintiff has not identified a proper comparator.  [ECF No. 90 at 10].  However, the Court concludes that Plaintiff has not produced sufficient evidence under the "convincing mosaic" standard. For the reasons stated below, the Court grants summary judgment for Defendant on the race discrimination claims (Counts II, IX, and XI).

Satisfying the *McDonnell-Douglas* framework is not essential for a plaintiff to survive summary judgment.  *See Reeves v. Columbus Consol. Gov't*, No. 23-11463, 2024 WL 33903, at *2 (11th Cir. Jan. 3, 2024) (citing *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  "Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Id.*  In other words, a court must deny a defendant's motion for summary judgment if the plaintiff "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Id.* (footnote and quotation marks omitted).  A plaintiff may establish a "convincing mosaic" by pointing to evidence that shows, "among other things, (1) suspicious timing or ambiguous statements, (2) systematically better treatment of similarly situated employees, and (3) pretext."  *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023) (quotation marks omitted); *see also Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022) (finding the plaintiff had established a "convincing mosaic" by showing, *inter alia*, that employees who committed similar misconduct remained employed, that a supervisor made racially biased comments, and that the supervisor gave "shifting reasons" for the plaintiff's termination).

While the "convincing mosaic" approach is more flexible than the *McDonnell-Douglas* framework, it is not a separate legal test.  *See Yelling*, 82 F.4th at 1342.  The plaintiff's "'mosaic' of evidence must still be enough to allow a reasonable jury to infer but-for causation."  *Id.*  The

"convincing mosaic" framework recognizes "that courts must consider the totality of a plaintiff's circumstantial evidence," before granting summary judgment. *Id.* "When a plaintiff who alleges a racial discrimination claim under Section 1981 or Title VII presents factual and credibility disputes which require a jury to resolve and 'would allow a jury to infer intentional discrimination,' summary judgment is improper." *Jenkins*, 26 F.4th at 1251.

The Eleventh Circuit recently revisited these frameworks in *Ismael v. Roundtree*, 161 F.4th 752 (11th Cir. 2025). There, the court clarified that summary judgment should not be granted simply because a plaintiff fails to show pretext under the *McDonnell-Douglas* standard; a plaintiff may still proceed to trial when she proffers sufficient evidence to show a genuine issue of material fact of intentional discrimination. *See id.* at 761–63. Thus, a district court should not conflate showing pretext (or not) with the standard to survive summary judgment. *Id.*

This important recent instruction from the Eleventh Circuit, however, does not help Plaintiff survive summary judgment on her race discrimination claims (or her disability discrimination claims). As Defendant avers, the R&R cited three main facts sufficient to warrant a finding of a "convincing mosaic" of intentional discrimination: (1) Defendant deviated from its policies by firing Plaintiff without giving her an opportunity to correct her behavior; (2) Supervisor James and Supervisor Davis made discriminatory remarks; and (3) another African-American employee filed an EEOC complaint concerning Supervisor James's discriminatory conduct. [*Id.* at 8–13; ECF No. 90 at 12–15]. As detailed below, this does not present a genuine issue of material fact to infer intentional discrimination.

### a.   *Deviation from Policy and Lack of Pretext*

Let's begin with (as Plaintiff has it) Defendant's deviation from its standard policies and procedures.[9] The R&R underscored that a dispute of fact exists as to whether Defendant deviated

---

[9]   At the threshold, even allowing that Plaintiff has raised a genuine issue of material fact that Defendant deviated at all from its internal policies may be too generous. The only evidence of a "policy deviation" comes from Plaintiff's uncorroborated testimony: "I [have] worked for this

from its policy by immediately terminating Plaintiff's employment (instead of providing a second chance or a regime of graduated discipline, for example). [*See* ECF No. 90 at 13]. Based on this evidence, the R&R concluded that such a deviation is sufficient circumstantial evidence to defeat summary judgment. [ECF No. 90 at 13]. But at summary judgment, the law says a Plaintiff must show more: she must introduce "a variety of evidence which, as a whole, *strongly suggested* that the [Defendant]'s employment decisions were based on her race." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337 (11th Cir. 2024) (emphasis added). Once a defendant successfully rebuts a presumption of discriminatory intent with a race-neutral basis for the adverse employment action (as Defendant did here), the plaintiff must present sufficient circumstantial evidence "that would allow a jury to infer intentional discrimination . . . ." *Ismael*, 161 F.4th at 764. So, is Defendant's "departure from policy" and immediate termination of Plaintiff enough for Plaintiff to survive summary judgment?

"An employer's departure from its normal policies and procedures can, in some cases, serve as evidence of pretext." *Connelly v. WellStar Health Sys., Inc.*, 758 F. App'x 825, 829 (11th Cir. 2019) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006)). "But mere failure to follow operating procedures, without more, does not necessarily suggest that an employer was motivated by illegal discriminatory intent or that its proffered reason for termination was pretextual." *Id.* (citing *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355–56 (11th Cir. 1999)). "Rather, to establish pretext based on failure to follow internal procedures, a plaintiff must show that the

---

company for six and a half years. I've been a part of terminations. We've never let someone go without coaching them, writing them up, having a conversation, giving them an opportunity to tell their side." [Gaskin Depo., ECF No. 48-2 at 15:19–24]. Besides her failure to specify the policy Defendant deviated from, Plaintiff neglected to provide any similarly-situated employee who was written up first or coached prior to termination. [*See id.* at 16:12–17; Depo. of Jessica Rarden, ECF No. 58-7 at 3:16–25]. More fundamentally, the undisputed record evidence shows that Defendant *followed* its internal policies when Supervisor James called Plaintiff to discuss one of the complaints about her prior to her termination. [James Decl., ECF No. 47-1 ¶¶ 11–12; Gaskin Depo., ECF No. 48-2 at 16:1–6]. Plaintiff also ignores record evidence establishing a policy that employees may be terminated for a single violation, even without prior discipline. [*See* ECF No. 58-9 at 9].

employer's 'deviation from policy occurred in a discriminatory manner.'" *Id.* (quoting *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002)).

"To avoid summary judgment the plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (cleaned up). "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Id.* (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). The employee "must address the employer's proffered legitimate reason[s] head on and rebut [them]." *Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 838 (11th Cir. 2015) (cleaned up).

Given this clear instruction from the Eleventh Circuit, Plaintiff's burden here is two-fold: she must show both that (1) Defendant's reason for terminating Plaintiff was false; *and* (2) Defendant's real reason for termination was discriminatory in nature. *See Brooks*, 446 F.3d at 1163; *see also Hicks*, 509 U.S. at 515. The latter prong is crucial here, as it "unquestionably holds the same focus as the convincing mosaic standard." *Ismael*, 161 F.4th at 761. Based on the record evidence, Plaintiff has fallen short of what is required under these established legal principles.

Defendant fired Plaintiff because several employees complained that Plaintiff "was rude, berating, and demeaning to them." [Declaration of Angelique Douty ("Douty Decl."), ECF No. 47-3 ¶ 6]. This violated Defendant's Code of Conduct and Respectful Workplace Policy that mandates treating all employees with dignity and respect. [*Id.* ¶ 4]. Acts of incivility, rudeness, bullying, or intimidation are all prohibited; any violation can result in disciplinary action, including "possible termination of employment[.]" [*Id.*; *see also* ECF No. 58-9 at 5, 7]. It is undisputed that Plaintiff was aware of workplace conduct policies. [JSUMF, ECF No. 65 ¶ 8].

Plaintiff proffers no evidence whatsoever that Defendant's reason for termination was false or, more importantly, that discrimination was the real reason for her termination. Plaintiff claims only

that she did not commit the conduct reported by other employees.  [*See, e.g.*, Gaskin Depo., ECF No. 48-2 at 11:9–12:3].   However, Plaintiff does not raise a genuine issue of material fact as to discrimination being the actual reason behind her termination.  Plaintiff had to address Defendant's purported legitimate reason "head on and rebut it."  *See Hawkins*, 613 F. App'x at 838 (quoting *Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*)).  This required Plaintiff to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Defendant]'s proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Id.* (quoting *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008)).  The record evidence is devoid of such a showing.

Indeed, record evidence demonstrates that Defendant's reason for termination was legitimate.  Not just one, but two employees complained of Plaintiff's behavior.  [Douty Decl., ECF No. 47-3 ¶ 6; Declaration of Asima Choudhury, ECF No. 47-4 ¶ 5; Declaration of Brooke Elmer, ECF No. 47-2 ¶ 7].  Upon receipt of the complaints, Human Resources investigated.  [Gaskin Depo., ECF No. 48-2 at 12:10–16; Douty Decl., ECF No. 47-3 ¶ 6].  After Human Resources Vice President Angelique Douty held discussions with Supervisor James and Supervisor Davis, management decided to terminate Plaintiff.  [*See* Douty Decl., ECF No. 47-3 ¶¶ 6–7; JSUMF, ECF No. 65 ¶ 14].  Contrary to Plaintiff's argument [*see* ECF No. 59 at 13, 17], Defendant's reason for termination was based on a violation of policies, *not* on job performance.  [Douty Decl., ECF No. 47-3 ¶ 8].  And it is immaterial that Defendant never issued Plaintiff formal discipline in the past [JSUMF, ECF No. 65 ¶ 15] because Defendant's policies inform that "[a] colleague may be immediately discharged for a single serious offense without a previous discipline (disciplinary action) recorded."  [ECF No. 58-9 at 9].

No evidence suggests an inference of intentional discrimination; in fact, evidence suggests the contrary.  Most significantly, in January 2023—only *two* months prior to Plaintiff's termination—Supervisor James recommended the promotion of Plaintiff to Program Director.  [James Decl., ECF

No. 47-1 ¶ 8; Gaskin Depo., ECF No. 48-1 at 126:13–128:3]. This evidence deeply undercuts the thrust of Plaintiff's claims; instead, it reinforces the inference that no discriminatory animus motivated Supervisor James's (thus, Defendant's) decision to fire Plaintiff. *See Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) (holding that "same actor" evidence may infer a lack of discriminatory intent); *see Hanford v. GEO Grp., Inc.*, No. 07-80446-CIV, 2008 WL 11333163, at *10 (S.D. Fla. Oct. 15, 2008) ("Courts recognize a 'permissible inference' of non-discrimination when the same individual initially treats plaintiff favorably and later treats the plaintiff unfavorably."). It was not until complaints concerning Plaintiff's behavior surfaced in February and March 2023 when Defendant reconsidered that promotion and ultimately terminated Plaintiff. [*See* James Decl., ECF No. 47-1 ¶¶ 8, 11, 13–15].

Plaintiff may believe that her termination, among other things, was wrongful, but "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules . . . ." *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999) (citations omitted). Plaintiff cannot succeed "by simply quarreling with the wisdom of [the Defendant's] reason." *Chapman*, 229 F.3d at 1030. She cannot "substitute h[er] business judgment for that of the employer." *Id.* "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (internal quotation marks omitted) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)). Even assuming Defendant erroneously concluded that Plaintiff violated workplace policies, the Court will not overrule the business judgment of Defendant in how it interprets and enforces its policies. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").[10]

---

[10] Additionally, to the extent Plaintiff claims and has shown that Human Resources conducted a poor investigation by "never g[ivng] [Plaintiff] an opportunity to tell [her] side" [Gaskin Depo., ECF No. 48-2 at 15:25–16:1], that is not enough. *See Vaughn v. Sizemore, Inc.*, No. 17-cv-1528, 2019 WL

In sum, Plaintiff has not met her burden on summary judgment to show pretext or a convincing mosaic that permits an inference of intentional discrimination.[11]

> ### b.   *No Other Evidence Exists to Infer Discriminatory Intent*

The R&R also considered two other pieces of circumstantial evidence from which a reasonable jury could draw an inference of discriminatory intent: (1) Supervisor James and Supervisor Davis's discriminatory remarks; and (2) a past EEOC complaint filed against Supervisor James.  [ECF No. 90 at 13–14].  This Court respectfully disagrees and concludes that this evidence is insufficient legally to survive summary judgment; the Defendant's objections here are sustained.

First, Plaintiff relies on specific remarks by her supervisors.   Supervisor James allegedly referred to two different African-American individuals as "crackheads."  [ECF No. 90 at 14].  Plaintiff testified that Supervisor James made these remarks at two different points in time: (1) at a team meeting in Sunrise; and (2) on the phone with Plaintiff when speaking about a member on a work team.  [Gaskin Depo., ECF No. 58-1 at 141:3–142:13].  Yet, there is no evidence in the record of when these comments were made or how they relate to any adverse employment decision affecting Plaintiff.  These isolated remarks do nothing to assist Plaintiff on summary judgment.  *See Aristyld v. City of Lauderhill*, 543 F. App'x 905, 908 (11th Cir. 2013) ("[S]tray remarks that are 'isolated and unrelated to the challenged employment decision' are insufficient in this respect." (citing *Rojas*, 285 F.3d at 1342–43)); *see also id.* ("Such remarks are probative if they illustrate the decision-maker's state of mind at the time that he made the challenged employment decision." (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999)).  For the same reasons, the "fresh off

---

5963615, at *19 (N.D. Ala. Nov. 13, 2019) ("[A] flawed investigation is insufficient to demonstrate that [Defendant]'s reason for terminating Plaintiff is pretext." (first citing *Duckworth v. Pilgrim's Pride Corp.*, 764 F. App'x 850, 854 (11th Cir. 2019); then citing *Flowers v. Troup Cnty., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015))).

[11]   For these same reasons, Plaintiff has not shown pretext for her ADA discrimination claims.

the boat" remark concerning Hispanics made by Supervisor Davis is irrelevant as it was purportedly said to a client outside the presence of Plaintiff [Gaskin Depo., ECF No. 48-2 at 87:14–88:2] and unrelated to any adverse action Plaintiff encountered.

Second, the EEOC complaint by another African-American employee lodged against Supervisor James does very little to prove a "convincing mosaic" of intentional discrimination against Plaintiff.  Discounting the alleged deviation from policy and above remarks (which do not help Plaintiff's case), the EEOC complaint standing alone is insufficient to infer discriminatory intent.  The R&R relied on *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261 (11th Cir. 2008), for the proposition that a coworker's discrimination by the same supervisor is probative of the supervisor's discriminatory intent.  [ECF No. 90 at 14].  However, *Goldsmith* predated the Supreme Court's decision in *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008), where the Court ruled that "me too" evidence is governed by a "fact-intensive, context-specific inquiry," and not by a categorical rule allowing or excluding it.  *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1258 (11th Cir. 2014) (discussing *Sprint/United Mgmt.*, 552 U.S. at 388).

Here, the Court concludes that this record evidence is insufficient.  The case of *Davis v. Dunn Construction Co.*, 872 F. Supp. 2d 1291 (N.D. Ala. 2012), is instructive.  There, the Northern District of Alabama rejected the plaintiff's "me-too" evidence in a Title VII hostile-work-environment case because the evidence consisted of "EEOC Charges that never resulted in lawsuits" and was, at most, evidence that "*other employees* have been discriminated against based on their race at work."  *Id.* at 1318 (emphasis in original).  The court granted summary judgment for the employer, reasoning that this "watered-down version of 'me-too' evidence" was not enough to create an inference "that *Plaintiff* was discriminated against on the basis of his race."  *Id.*

Plaintiff's case here is much like *Davis*.  As the R&R notes, the EEOC charge of the other African-American employee was withdrawn after discussion with Human Resources Vice President

Angelique Douty.  [ECF No. 90 at 14; Deposition of Kierra Forman ("Forman Depo."), ECF No. 62-1 at 24:4–12, 54:8–17].  The charge never resulted in a lawsuit and, if anything, raises an inference that Supervisor James discriminated Plaintiff's *co-worker*, but not *Plaintiff* herself.  Moreover, this "me too" evidence is irrelevant because this employee and Plaintiff did not hold "similar job positions" and there is no evidence that this employee was subject to the same adverse employment action.  *See Davis*, 872 F. Supp. 2d at 1318; [Forman Depo., ECF No. 62-1 at 9:22–24, 62:5–8 (stating that Plaintiff was the employee's superior at the relevant times)].  Finally, as in *Davis*, "[a]ny probative value of the EEOC charges, especially when such charges do not include a final determination, is substantially outweighed by the danger of unfair prejudice to the defendant."  *Id.* (citing *McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir. 1990)).

Accordingly, Plaintiff has failed her burden under the "convincing mosaic" framework and has not "put forward enough evidence for a jury to find for [her] on the ultimate question of discrimination."  *See Ismael*, 161 F.4th at 763.

3.  <u>Objection No. 3: The R&R's Findings on Plaintiff's Retaliation Claims.</u>  [ECF No. 91 at 15].  **SUSTAINED**.

Because a showing of pretext is also required for Plaintiff's retaliation claims, *see Davis v. Postmaster Gen.*, 550 F. App'x 777, 779 (11th Cir. 2013), the Court sustains Defendant's third objection for the same reasons stated above.  Irrespective of pretext, however, Plaintiff's evidence, "when artfully adhered together and viewed as one," does not allow "a reasonable juror to envision an image of retaliation and find in [Plaintiff]'s favor."  *See Ismael*, 161 F.4th at 764.

## V.    CONCLUSION

In view of the foregoing and upon due consideration, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The R&R [**ECF No. 90**] is **ADOPTED IN PART AND REJECTED IN PART**.

2.      Defendant's Motion for Summary Judgment [**ECF No. 45**] is **GRANTED**.

3.      Defendant's Objections [**ECF No. 91**] are **SUSTAINED**.

4.      The *Clerk* is *directed* to **CLOSE** this case.  All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

5.      Pursuant to Rule 58 of the Federal Rules of Civil Procedure, final judgment will be entered separately.


**DONE AND ORDERED** in the Southern District of Florida on January 6, 2026.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record